[Cite as *Duncan v. Fifth Third Bank*, 2019-Ohio-3198.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| BRANDY DUNCAN | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2018-CA-50 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-575 |
| | : | |
| FIFTH THIRD BANK | : | |
| | : | (Civil Appeal from |
| Defendant-Appellee | : | Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of August, 2019.

. . . . . . . . . . .

JAMIE L. ANDERSON, Atty. Reg. No. 0081218, 2190 Gateway Drive, Fairborn, Ohio 45324
        Attorney for Plaintiff-Appellant

KARA A. SZANIK, Atty. Reg. No. 0075165, NATHAN BLASKE, Atty. Reg. No. 0076460, and BENJAMIN GREINER, Atty. Reg. No. 0096924, 1900 First Financial Center, 255 East Fifth Street, Cincinnati, Ohio 45202
        Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Brandy Duncan appeals the entry of summary judgment for Fifth Third Bank on her claims for breach of contract, breach of the duty of good faith and fair dealing, and misrepresentation. We hold that any agreement between the parties was unenforceable because it did not comply with the statute of frauds, R.C. 1335.05, as there was no written agreement signed by the bank, and that any agreement was not removed from the statute of frauds by promissory estoppel. We also hold that on this record neither of the other two claims can be brought alone. Therefore we affirm.

## I. Facts and Procedural History

{¶ 2} In 2011, Fifth Third Bank filed a foreclosure action against real property owned by Duncan's parents, and judgment was entered for the bank. In June 2013, at a sheriff's sale, the bank purchased the property for $120,000. Afterward, the Duncan family tried to re-purchase[1] the property from the bank. According to Duncan, in 2014 her parents and the bank engaged in settlement discussions. Because they could not afford what the bank wanted, her parents asked if their daughter could purchase it. The bank agreed and engaged in discussions with Duncan. Duncan claims that the bank agreed to sell her the property for $117,000. Duncan sent the bank a "Contract to Purchase Real Estate" dated July 16, 2014, which she signed. But the bank never signed the agreement. Instead, on August 4, the bank sent Duncan a counter-offer of $195,000.

---

[1] Duncan, incorrectly in our view, alternatively refers to this purchase as an attempt to "redeem" the property. Redemption under R.C. 2329.33 can be accomplished before confirmation by depositing with the clerk "the amount of the judgment * * *, with all costs, including poundage, and interest." An order confirming the sale was entered on January 28, 2014. Later, on March 27, 2014, the Duncan parents filed a Civ. R. 60(B) motion for relief from judgment asserting they had been denied notice and an opportunity to redeem the property. Nonetheless, a non-owner daughter could not "redeem" the property.

{¶ 3} In August 2015, Duncan and her parents filed an action against Fifth Third Bank claiming breach of contract, breach of the duty of good faith and fair dealing, and misrepresentation. They alleged that the bank had offered to sell them the property for $117,000. In November, the bank placed the property back on the market. According to the bank, on November 18, it offered to sell the property to the Duncans for $155,000 but no one responded to the offer. In January 2016, the bank sold the property to someone else. The original action against the bank was dismissed without prejudice.

{¶ 4} A year later, in September 2017, Brandy Duncan alone refiled the complaint against Fifth Third Bank. The complaint alleged the same three causes of action—breach of contract, breach of the duty of good faith and fair dealing, and misrepresentation. The bank moved for summary judgment on the grounds that any agreement did not comply with the statute of frauds, R.C. 1335.05, because there was no written agreement that it had signed, because there were no reliance damages, and because the second and third claims were not independent of the failed contractual claim. Duncan argued that promissory estoppel removed the agreement from the statute of frauds and that she was denied the purchase of a $200.000 property for the price of $117,000.

{¶ 5} The trial court, citing *Olympic Holding Co., L.L.C. v. ACE Ltd.*, 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, held that promissory estoppel did not remove the agreement from the statute of frauds, so Duncan could not use promissory estoppel to bar the bank from asserting the statute of frauds as an affirmative defense to her breach-of-contract claim. The court granted summary judgment for the bank on the breach-of-contract claim, the breach-of-good-faith claim, and the misrepresentation claim. The court held that the latter two claims could not be brought as separate causes of action.

**{¶ 6}** Duncan appeals.

## II. Analysis

**{¶ 7}** Duncan presents three assignments of error for our review. Each concerns one of her three causes of action.

**{¶ 8}** We review a trial court's grant of summary judgment de novo. *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). By rule, Civ.R. 56(C), the moving party must show: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

## A. Breach-of-contract claim

**{¶ 9}** The first assignment of error alleges:

> THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF STATUTE OF FRAUDS.

**{¶ 10}** Ohio's statute of frauds provides that an action on a contract for the sale of real property must be in writing and signed by the defendant. R.C. 1335.05. "Agreements that do not comply with the statute of frauds are unenforceable." (Citation omitted.) *Olympic*, 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, at ¶ 32. Here, there was no dispute that no written document existed bearing the bank's signature that agreed to sell the property to Duncan for $117,000.

{¶ 11} Duncan argues that promissory estoppel removes the agreement from the statute of frauds and therefore an oral agreement between the parties was enforceable. In *Olympic*, the case relied on by the trial court, the Ohio Supreme Court held that promissory estoppel did not remove the parties' unwritten agreement from the statute of frauds. The Court held that "the breach of an oral promise to sign an agreement does not remove an agreement from the signing requirement of the statute of frauds. Consequently, a party may not use promissory estoppel to bar the opposing party from asserting the affirmative defense of the statute of frauds * * *." *Id.* at ¶ 51. It is true that promissory estoppel may act as a narrow exception to the statute of frauds in certain circumstances. *See id.* at ¶ 29 ("We recognize that numerous jurisdictions have held that under various circumstances, promissory estoppel may be used to remove an agreement from having to comply with the statute of frauds."); *Mishler v. Hale*, 2014-Ohio-5805, 26 N.E.3d 1260, ¶ 26 (2d Dist.) (saying that promissory estoppel is an exception to the statute of frauds). But the Ohio Supreme Court has held that under circumstances like those in *Olympic*—an alleged oral promise to sign an agreement—the use of promissory estoppel to bar the opposing party from asserting the affirmative defense of the statute of frauds does not apply. *See id.* ("However, we decline to adopt that exception under the circumstances of this case because it is both unnecessary and damaging to the protections afforded by the statute of frauds.").

{¶ 12} Here, Duncan alleges that the bank made an oral promise to sell her the property for $117,000, which she accepted. Because there were no written documents that complied with the statute of frauds, that alleged agreement, even if made, was legally unenforceable as a contract.

{¶ 13} In her brief, and in the trial court below, Duncan argued that promissory estoppel should apply to allow her to pursue a recovery. In *Olympic*, separate from the holding that under the circumstances promissory estoppel did not bar application of the statute of frauds, the court recognized that "*Promissory Estoppel **as an Action for Damages** Provides an Adequate Remedy for Detrimental Reliance on a Breached Promise*" (Emphasis added.) *Id.*, Heading of subsection III, B. However, we agree with the trial court that "a review of the complaint filed in this case reveals that [Duncan] did not plead a claim for promissory estoppel." (Decision and Entry, Doc. # 39, p. 4.)

{¶ 14} The complaint alleges three causes of action "COUNT 1: BREACH OF CONTRACT," "COUNT 2: BREACH OF GOOD FAITH AND FAIR DEALING," and "COUNT 3: MISREPRESENTATION." (Doc. # 1.) Count one unquestionably raises a contract claim when it indicated "[d]efendant breached its contractual obligations under this agreement." (*Id.* at ¶ 27.) Count two likewise raised a contract claim by alleging "[d]efendant breached its contractual obligations of good faith and fair dealing." (*Id.* at ¶ 37.) Count three, although it avers justified reliance on the bank's stated $117,000 purchase price, alleges "[d]efendant's statement that it would sell the property for $117,000.00 was made with conscious ignorance or a reckless disregard for the truth." (*Id.* at ¶ 44.) That count concludes with an allegation that Duncan was damaged as a result "of defendant's misrepresentation." (*Id.* at ¶ 45.) Even construing the complaint most favorably to Duncan, we conclude an action for promissory estoppel was not pled.

{¶ 15} In addition, had we concluded that a promissory estoppel claim was pled, that claim would fail by the absence of pled or demonstrated reliance damages. "[T]o establish a claim of promissory estoppel, the plaintiffs must prove '(1) a clear,

unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) *the person claiming reliance is injured as a result of the reliance on the promise.'* " (Emphasis added) *Shepard v. Griffin Servs., Inc.,* 2d Dist. Montgomery No. 19032, 2002 WL 940110, *14, quoting *Weiper v. W.A. Hill & Assoc.*, 104 Ohio App.3d 250, 260, 661 N.E.2d 796 (1st Dist. 1995). The evidence and arguments suggest two categories of damages. First, Duncan's affidavit filed November 15, 2018 in opposition to the motion for summary judgment stated that, due to the increased purchase price "my parents * * * were forced to leave said property, thus incurring thousands of dollars in moving expenses." (Doc. # 37.) Duncan could not recover damages personal to her parents who were not parties to this refiled case. Secondly, Duncan argues that the value of the home she was unable to buy for $117,000 was $200,000, and therefore she was "essentially out approximately $83,000.00 in equity in a home." (Appellant's Brief at 7.) But that formulation represents expectancy damages, not reliance damages caused by a detrimental change in position based on the alleged promise. Accordingly, a promissory estoppel claim would fail for lack of damages resulting from reliance.

{¶ 16} The first assignment of error is overruled.

### B. Breach-of-good-faith claim

{¶ 17} The second assignment of error alleges:

APPELLEE VIOLATED ITS DUTY OF GOOD FAITH AND FAIR DEALING.

{¶ 18} In Ohio, every contract imposes on each party a duty of good faith and fair dealing in performance and enforcement. *Krukrubo v. Fifth Third Bank*, 10th Dist. Franklin No. 07AP-270, 2007-Ohio-7007, ¶ 18. Here, because the alleged agreement was not

enforceable, it imposed no duty of good faith and fair dealing on the parties.

{¶ 19} Moreover, a claim for breach of this duty cannot stand alone. Because the duty of good faith is integral to any contract, the breach of that duty is integral to a cause of action for breach of contract. *Id.* at ¶ 19. This means that, generally, a breach of the good-faith duty may not exist as a cause of action separate from a breach-of-contract claim. *Id.*; *Wauseon Plaza Ltd. Partnership v. Wauseon Hardware Co.*, 156 Ohio App.3d 575, 2004-Ohio-1661, 807 N.E.2d 953, ¶ 52 (6th Dist.).

{¶ 20} The second assignment of error is overruled.

### C. Misrepresentation claim

{¶ 21} The third assignment of error alleges:

THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION FOR

SUMMARY JUDGMENT DUE TO OBVIOUS MISREPRESENTATION IN THIS CASE.

{¶ 22} On this record, Duncan's misrepresentation claim does not stand alone either. "[A] tort claim based upon the same actions as those upon which a breach-of-contract claim is based will exist independently of the contract action 'only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed.' " *425 Beecher, L.L.C. v. Unizan Bank, Natl. Assn.*, 186 Ohio App.3d 214, 2010-Ohio-412, 927 N.E.2d 46, ¶ 51 (10th Dist.), quoting *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151, 684 N.E.2d 1261 (9th Dist.1996). Here, Duncan's allegations in support of her misrepresentation claim were the same as those used to support her breach-of-contract claim. Her claim was that the bank represented that it would sell her parent's former home to her for $117,000 but then failed to honor that representation and made a " 'counter offer' of $195,000.00." (Duncan

affidavit ¶ 11.) "I, through my counsel, continued to negotiate the purchase price for said property but were unable to reach an agreement on the purchase price." (*Id.* at ¶ 14.) We have already determined that no enforceable contractual agreement was reached and therefore no enforceable contractual duty existed. Furthermore, we see no "duty owed separately" by the bank to the Duncan's daughter. Therefore, consistent with *425 Beecher,* the trial court did not err in granting summary judgment to the bank in regard to the misrepresentation claim.

{¶ 23} In addition, as we noted in paragraph 14 above, Duncan's claimed damages were 1) that she was denied the opportunity to buy a property for $117,000 that her brief argues was worth $200,000, and 2) that her parents "were forced to leave said property, thus incurring thousands of dollars in moving expenses." (Duncan affidavit ¶ 15.) Whether her third claim were construed as intentional misrepresentation (most commonly referred to as fraud), or the tort of negligent misrepresentation, justifiable reliance and damages proximately caused by such reliance were elements of both torts. *Martin v. Ohio State Univ. Found.*, 139 Ohio App.3d 89, 103-104, 742 N.E.2d 1198 (10th Dist.2000). The evidence and arguments did not support injury to Brandy Duncan for reliance damages resulting from a detrimental change in position on account of the misrepresentation alleged.

{¶ 24} The third assignment of error is overruled.

### III. Conclusion

{¶ 25} We have overruled each of the assignments of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.


Copies sent to:

Jamie L. Anderson
Kara A. Czanik
Nathan Blaske
Benjamin Greiner
Hon. Michael A. Buckwalter